UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MATTHEW SCIABACUCCHI, derivatively on behalf of ZILLOW GROUP, INC., <br><br>Plaintiff,<br><br>v.<br><br>RICHARD N. BARTON, ERIK C. BLACHFORD, LLOYD D. FRINK, JAY C. HOAG, GREGORY B. MAFFEI, SPENCER M. RASCOFF, GORDON S. STEPHENSON, GREGORY L. WALDORF and KATHLEEN PHILIPS,<br><br>Defendants,<br><br>and<br><br>ZILLOW GROUP, INC.,<br><br>Nominal Defendant. | Civil Action No.<br><br><br><br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

1.  Plaintiff Matthew Sciabacucchi ("Plaintiff"), by and through his undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint (the "Complaint") for the benefit of nominal defendant Zillow Group, Inc. ("Zillow" or the "Company") against certain current and/or former members of its Board of Directors (the "Board") and executive officers, seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 1

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

## NATURE OF THE ACTION

2. According to its public filings, Zillow provides e-commerce services. The Company provides information about homes, real estate listings, and mortgages through its website and mobile applications. Zillow serves homeowners, buyers, sellers, renters, and real estate professionals throughout the United States.

3. The Company uses a co-marketing program, which permits real estate agents and mortgage lenders with whom it has a working relationship to jointly advertise on Zillow's applications and website (the "Co-Marketing Program").

4. The Co-Marketing Program, launched in June 2013, allows "Premier Agents" who pay for advertising on Zillow's apps and websites to invite lenders to share marketing costs by paying Zillow to appear as "Premier Lenders" in advertising alongside the agent.

5. As part of its business, Zillow is subject to government oversight. Specifically, Zillow is required to abide by Section 8 of the Real Estate Settlement Procedures Act ("RESPA"), which prohibits kickbacks from real estate settlement services.

6. In April 2017, Zillow received a Civil Investigative Demand (the "2017 CID") from the Consumer Financial Protection Bureau ("CFPB") that questioned whether some of Zillow's advertising revenues violated regulations against kickbacks.

7. On August 8, 2017, defendants caused the Company to file a Quarterly Report on Form 10-Q with the SEC (the "2Q2017 Form 10-Q"), announcing the Company's financial and operating results for the quarter ended June 30, 2017. The 2Q2017 Form 10-Q stated in relevant part that the CFPB invited Zillow to discuss a possible settlement and that the CFPB *intends to pursue further action if those discussions do not result in a settlement*.

8. The 2017 CID was not the first time the CFPB had inquired into the Co-Marketing

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 2

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Plan. Critically, the 2Q2017 Form 10-Q stated the CID "stemmed from an inquiry that commenced in 2015 when [the Company] received and responded to an initial Civil Investigative Demand from the CFPB" (the "2015 CID").

9. On this news, the Company's stock price fell by over 15% over the next two trading days, closing at $40.50 on August 10, 2017.

10. Defendants were first put on notice *over two years ago* via the 2015 CID that the Co-Marketing Program may have violated federal law, but took no action to end the Co-Marketing Program or to ensure that it was in compliance with federal law, in violation of their fiduciary duties.

11. Accordingly, the Company has been damaged.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiffs and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

13. Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 3

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

## THE PARTIES

14. Plaintiff is a current shareholder of Zillow and has continuously held Zillow stock since August 2015. Plaintiff is a citizen of Pennsylvania.

15. Nominal defendant Zillow is a Washington corporation with its headquarters located at 1301 Second Avenue, Seattle, Washington 98101. According to its public filings, Zillow provides e-commerce services. The Company provides information about homes, real estate listings, and mortgages through its websites and mobile applications.

16. Defendant Richard N. Barton ("Barton") is the Company's co-founder and has served as its Executive Chairman since September 2010. In addition, defendant Barton has served as a director of the Company since its inception in December 2004 and previously served as the Company's Chief Executive Officer ("CEO") from inception until September 2010. Upon information and belief, defendant Barton is a citizen of Washington.

17. Defendant Erik C. Blachford ("Blachford") has served as a director of the Company since 2005. In addition, defendant Blachfold served as a member of the Board's Audit Committee (the "Audit Committee") during the Relevant Period. Upon information and belief, defendant Blachford is a citizen of California.

18. Defendant Lloyd D. Frink ("Frink") is a co-founder of the Company and has served as a director since the Company's inception. Frink is the Vice Chairman of the Board. Upon information and belief, defendant Frink is a citizen of Washington.

19. Defendant Jay C. Hoag ("Hoag") has served as a director of the Company since 2005. Upon information and belief, defendant Hoag is a citizen of California.

20. Defendant Gregory B. Maffei ("Maffei") has served as a director of the Company since 2005. In addition, defendant Maffei served as the Chairman of the Audit Committee during

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 4

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

the Relevant Period.  Upon information and belief, defendant Maffei is a citizen of Colorado.

21. Defendant Spencer M. Rascoff ("Rascoff") has served as the Company's CEO since 2010 and a director since 2011. Upon information and belief, defendant Rascoff is a citizen of Washington.

22. Defendant Gordon S. Stephenson ("Stephenson") has served as a director of the Company since 2005. In addition, defendant Stephenson served as a member of the Audit Committee during the Relevant Period. Upon information and belief, defendant Stephenson is a citizen of Washington.

23. Defendant Gregory L. Waldorf ("Waldorf") served as a director of the Company from February 2015 until June 2016. Upon information and belief, defendant Waldorf is a citizen of California.

24. Defendant Kathleen Philips ("Philips") has served as the Company's Chief Financial Officer ("CFO") since 2015. Upon information and belief, defendant Philips is a citizen of Washington.

25. Non-party April Underwood ("Underwood") has served as a director of the Company since February 2017.

26. Collectively, defendants Barton, Blachford, Frink, Hoag, Maffei, Rascoff, Stephenson, Waldorf and Philips shall be referred to herein as "Defendants."

27. Collectively, defendants Maffei, Blachford, and Stephenson shall be referred to herein as the "Audit Committee Defendants."

28. Collectively, defendants Barton, Blachford, Frink, Hoag, Maffei, Rascoff, Stephenson and Underwood shall be referred to herein as the "Demand Directors."

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 5

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

**DEFENDANTS' DUTIES**

29. By reason of their positions as officers, directors, and/or fiduciaries of Zillow and because of their ability to control the business and corporate affairs of Zillow, Defendants owed Zillow and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Zillow in a fair, just, honest, and equitable manner. Defendants were and are required to act in furtherance of the best interests of Zillow and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Zillow and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

30. Defendants, because of their positions of control and authority as directors and/or officers of Zillow, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Zillow, each of the Defendants had knowledge of material non-public information regarding the Company.

31. To discharge their duties, the officers and directors of Zillow were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Zillow were required to, among other things:

   a. Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

   b. Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 6

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

c. When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

32. Pursuant to the Audit Committee's Charter, the members of the Audit Committee are required to assist the Board in oversight of: (a) the Company's accounting and financial reporting processes and the audits of the Company's financial statements, (b) the independent auditor's qualifications, independence and performance, (c) the Company's internal audit function, if any, and the performance of its internal accounting and financial controls, and (d) the Company's compliance with legal and regulatory requirements.

33. The Audit Committee is further charged with reviewing legal and regulatory matters that may have a material impact on the financial statements and related Company compliance policies and programs and to discuss policies with respect to risk assessment and risk management, including the Company's major financial risk exposures and the steps management has taken to monitor and control such exposures.

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company

34. According to its public filings, Zillow provides e-commerce services. The Company provides information about homes, real estate listings, and mortgages through its website and mobile applications. Zillow serves homeowners, buyers, sellers, renters, and real estate professionals throughout the United States.

35. The Co-Marketing Program, launched in June 2013, allows "Premier Agents," who pay for advertising on Zillow's apps and websites, to invite lenders to share marketing costs by paying Zillow to appear as "Premier Lenders" in advertising alongside the agent.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 7

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

36. Premier Agents are real estate agents who purchase a specific advertising package for their advertisements to be placed along potential clients looking for real estate in their respective zip codes. According to Zillow's website:

> By advertising on Zillow, you receive more than just placement on one of the leading real estate sites on the Web. Your advertising extends beyond our millions of monthly active home shoppers, to placement on Yahoo! Real Estate as well as across our top-rated mobile apps. Receive instant visibility for your brand and your listings on the largest real estate network on the Web
>
> \* \* \*
>
> The Zillow Premier Agent program is designed with the simple purpose of bringing agents more buyers, more sellers, and more business. Each service tier is loaded with innovative and powerful features aimed to generate more traffic to your brand and your listings -- helping you sell homes faster. With three tiers of service, there's a Premier Agent package that's right for you.

37. The Premier Agent program has been a financial boon for the Company. According to the Company's third quarter 2017 investor presentation, the Premier Agent program accounts for 71% of the Company's revenues:




38. The Company's Co-Marketing Program allows Premier Agents to offset their

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT - 8

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

marketing costs by partnering with lenders, so that lenders' advertisements will appear in tandem with the Premier Agent. The Company's website explains:

> From the Lender Co-marketing dashboard, a Premier Agent® can invite a lender to share marketing costs with them. The agent specifies the dollar amount they would like each lender to contribute. An agent can have up to 50 percent of their marketing costs covered by their lender(s). Once the lender confirms, they will immediately start appearing alongside the agent on Zillow.

**B.    The Company's Regulatory Obligations**

39.    The Co-Marketing Program, among other aspects of the Company's business, brings the Company within the purview of government regulation. Specifically, among other laws, the Company is subject to RESPA.

40.    Section 8 of RESPA states:

> (a) No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
>
> (b) No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

41.    On February 12, 2016, Defendants caused the Company to file an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2015 (the "2015 10-K"). The 2015 10-K was signed by defendants Rascoff, Philips, Barton, Frink, Blachford, Flint, Hoag, Maffei, Stephenson, and Waldorf.

42.    In addition, pursuant to the Sarbanes-Oxley Act of 2002, the 2015 10-K contained signed certifications ("SOX Certifications") by defendants Rascoff and Philips, stating that the financial information contained in the 2015 10-K was accurate, and that any material changes to the Company's internal control over financial reporting were disclosed. The SOX Certifications

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 9

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

set forth, in pertinent part:

I, [Spencer M. Rascoff/Kathleen Philips], certify that:

1. I have reviewed this Annual Report on Form 10-K of Zillow Group, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    (c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    (a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 10

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

* * *

In connection with the Annual Report of Zillow Group, Inc. (the "Company") on Form 10-K for the fiscal year ended December 31, 2015 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, [Spencer M. Rascoff, Chief Executive Officer of the Company/Kathleen Philips, Chief Financial Officer, Chief Legal Officer, and Secretary of the Company], certify, pursuant to 18 U.S.C. §1350, as adopted pursuant to §906 of the Sarbanes-Oxley Act of 2002, that:

(1) The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m or 78o(d)); and

(2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

43.   Further, in the 2015 10-K, Defendants stated the following regarding the Company's purported adherence to government regulations:

**Government Regulation**

We are affected by laws and regulations that apply to businesses in general, as well as to businesses operating on the Internet and through mobile applications. This includes a continually expanding and evolving range of laws, regulations and standards that address information security, data protection, privacy, consent and advertising, among other things. We are also subject to laws governing marketing and advertising activities conducted by telephone, email, mobile devices, and the Internet, including the Telephone Consumer Protect Act, the Telemarketing Sales Rule, the CAN-SPAM Act, and similar state laws. In addition, some of our mortgage advertising products are operated by our wholly owned subsidiary, Zillow Group Mortgages, Inc., a licensed mortgage broker, pursuant to a support services agreement. Though we do not take mortgage applications or make loans or credit decisions in connection with loans, Zillow Group Mortgages, Inc. is subject to stringent state and federal laws and regulations and to the scrutiny of state and federal government agencies as a licensed mortgage broker.

By providing a medium through which users can post content and communicate with one another, we may also be subject to laws governing intellectual property ownership, obscenity, libel, and privacy, among other issues. In addition, the real estate agents, mortgage professionals, banks, property managers, rental agents and some of our other customers and advertisers on our mobile applications and websites are subject to various state and federal laws and regulations relating to real estate, rentals and mortgages. We endeavor to ensure that any content created by

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 11

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

> Zillow is consistent with such laws and regulations by obtaining assurances of compliance from our advertisers and consumers for their activities through, and the content they provide on, our mobile applications and websites. The real estate, mortgages, and rentals industries are subject to significant state and federal regulation; though we provide advertising services and technology solutions to real estate, mortgages, and rentals professionals, certain of our activities may be deemed to be covered by these industry regulations. Since the laws and regulations governing real estate, rentals and mortgages are constantly evolving, it is possible that we may have to materially alter the way we conduct some parts of our business activities or be prohibited from conducting such activities altogether at some point in the future.

44. On February 2, 2017, Defendants caused the Company to file an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2016 (the "2016 10-K"). The 2016 10-K was signed by defendants Rascoff, Philips, Barton, Frink, Blachford, Flint, Hoag, Maffei, and Stephenson.

45. In addition, the 2016 10-K contained SOX Certifications, signed by defendants Rascoff and Philips, which were substantially similar to those set forth in ¶42 above, and a statement regarding the Company's purported adherence to government regulation that was identical to that set forth in ¶43 above.

## C. The Truth Emerges

46. On May 4, 2017, Defendants caused the Company to file a Quarterly Report on Form 10-Q with the SEC (the "1Q2017 Form 10-Q"), announcing the Company's financial and operating results for the quarter ended March 31, 2017. The 1Q2017 Form 10-Q also disclosed that the Company had received the 2017 CID from the CFPB questioning whether some of Zillow's advertising revenues violated regulations against kickbacks.

47. On August 8, 2017, Defendants caused the Company to file the 2Q2017 Form 10-Q, announcing the Company's financial and operating results for the quarter ended June 30, 2017. The 2Q2017 Form 10-Q stated, in relevant part:

> In April 2017, we received a Civil Investigative Demand from the Consumer

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 12

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

> Financial Protection Bureau ("CFPB") requesting information related to our March 2017 response to the CFPB's February 2017 Notice and Opportunity to Respond and Advise ("NORA") letter. The NORA letter notified us that the CFPB's Office of Enforcement was considering whether to recommend that the CFPB take legal action against us, alleging that we violated Section 8 of the Real Estate Settlement Procedures Act ("RESPA") and Section 1036 of the Consumer Financial Protection Act ("CFPA"). ***This notice stemmed from an inquiry that commenced in 2015 when we received and responded to an initial Civil Investigative Demand from the CFPB.*** We continue to cooperate with the CFPB in connection with requests for information. Based on correspondence from the CFPB in August 2017, we understand that it has concluded its investigation. The CFPB has invited us to discuss a possible settlement and indicated that it intends to pursue further action if those discussions do not result in a settlement. We continue to believe that our acts and practices are lawful and that our comarketing program allows lenders and agents to comply with RESPA, and we will vigorously defend against any allegations to the contrary. Should the CFPB commence an action against us, it may seek restitution, disgorgement, civil monetary penalties, injunctive relief or other corrective action. We cannot provide assurance that the CFPB will not commence a legal action against us in this matter, nor are we able to predict the likely outcome of any such action. We have not recorded an accrual related to this matter as of June 30, 2017 or December 31, 2016. ***There is a reasonable possibility that a loss may be incurred; however, the possible loss or range of loss is not estimable.***

(emphasis added).

48.     On August 8, 2017, an earnings conference call was held with analysts, during which defendant Philips stated, in relevant part:

> On our last earnings call, we shared that the Consumer Financial Protection Bureau had requested additional information from us as part of its evaluation. That evaluation is now complete. We have been invited to discuss a possible settlement and informed that *if those discussions do not result in a settlement, the CFPB intends to pursue further action*.

49.     Following this news, Zillow's share price fell by $7.43, or 15.5%, over the following two trading days to close at $40.50 on August 10, 2017.

50.     Susquehanna International Group analyst Shyam Patil ("Patil") wrote on August 8, 2017 that he believes the Co-Marketing Program accounts for as much as 10% of the Company's revenues. Patil further suggested that "[c]onduct based remedies" as part of a settlement with the CFPB, and not a fine, "represent the biggest risk to the [C]ompany."

51.     Defendants commenced settlement negotiations with the CFPB almost

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 13

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

immediately. Defendants Philips told analysts on the same August 8, 2017 conference call:

> Things are -- we expect things are going to move pretty quickly with the CFPB. We're going to be commencing settlement discussions over the next few weeks. In fact, I'm headed to D.C. for the first meeting tomorrow. So we anticipate that to be a pretty fast process. If we are not able to reach a settlement, this turns into a regular litigation matter in federal court with discovery, procedural motions and the like, which, as you well know, can take quite a bit of time. But the CFPB settlement portion, we don't anticipate that to be very long or drawn out.

52.  As a result of Defendants' breaches of fiduciary duty and other serious misconduct, the Company has been harmed and faces the risk of future damage.

## DERIVATIVE AND DEMAND ALLEGATIONS

53.  Plaintiff brings this action derivatively in the right and for the benefit of Zillow to redress the breaches of fiduciary duty and other violations of law by Defendants.

54.  Plaintiff will adequately and fairly represent the interests of Zillow and its shareholders in enforcing and prosecuting its rights.

55.  The Board currently consists of the following eight (8) directors: defendants Barton, Blachford, Frink, Hoag, Maffei, Rascoff, and Stephenson, and non-party Underwood. Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful and useless act, for the following reasons:

 a. The principal professional occupation of defendant Rascoff is his employment with Zillow as its CEO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits. In addition, according to the Company's April 26, 2017 Proxy Statement (the "2017 Proxy") the Board has determined that defendant Rascoff is not an independent director within the meaning of NASDAQ rules because he has a relationship that would interfere with the exercise of his independent judgment in carrying out the responsibilities of a director;

 b. Defendants Frink and Barton are the Company's co-founders. According to the 2017 Proxy, the Board has determined that defendants Frink and Barton are not independent directors within the meaning of NASDAQ rules because they have relationships that would interfere with the exercise of their independent judgment in carrying out the responsibilities of a director;

 c. Defendants Barton, Blachford, Frink, Hoag, Maffei, Rascoff, and Stephenson

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 14

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

each signed the false and misleading 2015 10-K and 2016 10-K, which falsely represented that the Company was in compliance with all government regulations;

d. The Audit Committee Defendants (Maffei, Blachford, and Stephenson) each face a substantial likelihood of liability for their failure to take steps to ensure the Company's regulatory compliance. The Audit Committee Charter specifically charges the members of the Audit Committee with ensuring the Company's compliance with legal and regulatory requirements, and the Audit Committee Defendants violated their duties of loyalty and good faith by failing to take adequate steps to ensure such compliance; and

e. Defendants Maffei and Blachford also served as members of the Company's Audit Committee at the time that the Company received the 2015 CID from the CFPB. Defendants Maffei and Blachford, therefore, additionally face a substantial likelihood of liability for their failure to properly ensure that the Company was in compliance with all legal and regulatory requirements after they were specifically put on notice of potential violations in 2015.

## COUNT I
### AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR DISSEMINATING INACCURATE INFORMATION

56. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

57. As alleged in detail herein, each of the Defendants had a duty to ensure that Zillow disseminated accurate, truthful and complete information to its shareholders.

58. Defendants violated their fiduciary duties of loyalty and good faith by causing or allowing the Company to disseminate to Zillow shareholders materially misleading and inaccurate information through, *inter alia*, SEC filings, press releases, conference calls, and other public statements and disclosures as detailed herein. These actions could not have been a good faith exercise of prudent business judgment.

59. As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT II
### AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR FAILING TO MAINTAIN INTERNAL CONTROLS

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 15

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

60. Plaintiff incorporates by references all preceding and subsequent paragraphs as if fully set forth herein.

61. As alleged herein, each of the Defendants (and particularly the Audit Committee Defendants) had a fiduciary duty to, among other things, exercise good faith to ensure the Company's compliance with legal and regulatory requirements, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

62. As a direct and proximate result of the Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages.

## COUNT III
## AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT

63. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

64. By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of Zillow.

65. Plaintiff, as a shareholder and representative of Zillow, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, as a result of their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT - 16

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

B. Directing Zillow to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

C. Awarding to Zillow restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

D. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED this 23rd day of October, 2017.

*s/ Duncan C. Turner*
DUNCAN C. TURNER, WSBA No. 20597
BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
Telephone: (206) 621-6566
Facsimile: (206) 621-9686
Email: dturner@badgleymullins.com

*Liaison Counsel for Plaintiff*

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT - 17

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

|   |   |
|---|---|
| 1 | |
| 2 | BRETT D. STECKER |
|   | JAMES M. FICARO |
| 3 | 22 Cassatt Avenue |
|   | Berwyn, PA 19312 |

BRETT D. STECKER
JAMES M. FICARO
22 Cassatt Avenue
Berwyn, PA 19312
Telephone:  (610) 225-2677
Facsimile:  (610) 408-8062
Email:      rw@weiserlawfirm.com
            bds@weiserlawfirm.com
            jmf@weiserlawfirm.com
*Counsel for Plaintiff*

## VERIFICATION

I, Matthew Sciabacucchi, under penalty of perjury, state as follows:

I am the Plaintiff in the above-captioned action. I have read the foregoing Complaint and authorized its filing. Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.

DATED: 10/4/17

*[signature]*
Matthew Sciabacucchi

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT - 18

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686