THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE ZILLOW GROUP, INC. SHAREHOLDER DERIVATIVE LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Master File No.:  17-cv-01568-JCC<br><br>DEFENDANTS' MOTION TO DISMISS THE VERIFIED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT<br><br>NOTE ON MOTION CALENDAR: November 8, 2019<br><br>ORAL ARGUMENT REQUESTED |

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) –

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 3

LEGAL STANDARDS ...................................................................................................... 5

ARGUMENT ..................................................................................................................... 7

I.     PLAINTIFFS HAVE NOT PLEADED PARTICULARIZED FACTS SHOWING
       THAT ZILLOW'S OUTSIDE DIRECTORS ARE SUBJECT TO A
       SUBSTANTIAL LIKELIHOOD OF LIABILITY .................................................... 8

       A.     This Court's Decision In The Securities Suit Is Irrelevant To Whether The
              Outside Directors Face A Substantial Likelihood Of Liability. ........................... 8

       B.     Plaintiffs Do Not Explain How The Directors Exercised "Control" Over
              The Conduct Alleged In The Securities Action. ................................................. 10

       C.     Membership On Zillow's Audit Committee Does Not Give Rise To A
              Substantial Likelihood Of Liability. ................................................................. 11

       D.     Plaintiffs Have Not Stated A *Caremark* Claim .................................................. 13

II.    PLAINTIFFS HAVE NOT PLEADED PARTICULARIZED FACTS SHOWING
       THAT ZILLOW'S OUTSIDE DIRECTORS LACKED INDEPENDENCE. ................. 13

III.   PLAINTIFFS HAVE NOT PLEADED PARTICULARIZED FACTS SHOWING
       THAT THE BOARD COULD NOT MAKE A PROPER BUSINESS
       JUDGMENT IN RESPONSE TO A DEMAND THAT THE COMPANY
       PURSUE A CLAIM FOR UNJUST ENRICHMENT ............................................... 15

CONCLUSION ................................................................................................................ 16

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – i

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Accuray, Inc. S'holder Derivative Litig.*,
  757 F. Supp. 2d 919 (N.D. Cal. 2010) ...............................................11, 12, 14

*Stone ex rel. AmSouth Bancorporation v. Ritter*,
  911 A.2d 362 (Del. 2006) ..................................................................................9

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) .........................................................................1, 6, 7

*Beam v. Stewart*,
  845 A.2d 1040 (Del. 2004) .......................................................7, 8, 13, 14

*In re BofI Holding, Inc. S'holder Litig.*,
  2017 WL 784118 (S.D. Cal. Mar. 1, 2017) ....................................................2, 9

*Braddock v. Zimmerman*,
  906 A.2d 776 (Del. 2006) ..................................................................................5

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) .........................................................................1, 6

*In re Caremark Int'l Inc. Derivative Litig.*,
  698 A.2d 959 (Del. Ch. 1996).......................................................................2, 13

*In re Citigroup Inc. Shareholder Derivative Litigation*,
  964 A.2d 106 (Del. Ch. 2009).......................................................10, 11, 12, 13

*In re Coca-Cola Enters., Inc. Derivative Litig.*,
  478 F. Supp. 2d 1369 (N.D. Ga. 2007) ...........................................................12

*In re Coinstar Inc. S'holder Derivative Litig.*,
  2011 WL 5553778 (W.D. Wash. Nov. 14, 2011) .............................................7

*In re Cray, Inc.*,
  431 F. Supp. 2d 1114 (W.D. Wash. 2006).........................................................1

*Desimone v. Barrows*,
  924 A.2d 908 (Del. Ch. 2007).......................................................................6, 13

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – ii

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Dow Chem.*,
   2010 WL 66769 (Del. Ch. Jan. 11, 2010) ...................................................................16

*In re F5 Networks, Inc.*,
   207 P.3d 433 (Wash. 2009) (en banc) .........................................................................6

*Fernandes v. Bianco*,
   2006 WL 6862716 (W.D. Wash. June 22, 2006) ......................................................7, 10

*In re Friedman's, Inc. Derivative Litigation*,
   386 F. Supp. 2d 1355 (N.D. Ga. 2005) ......................................................................15

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003) ...............................................................................7, 13

*Haber v. Bell*,
   465 A.2d 353 (Del. Ch. 1983) ....................................................................................7

*In re infoUSA, Inc. S'holders Litig.*,
   953 A.2d 963 (Del. Ch. 2007) ................................................................................6, 10

*Khanna v. McMinn*,
   2006 WL 1388744 (Del. Ch. May 9, 2006) ................................................................15

*In re MFW S'holders Litig.*,
   67 A.3d 496 (Del. Ch. 2013) .....................................................................................15

*Murashko v. Hammer*,
   2018 WL 1022575 (D.N.J. Feb. 22, 2018) ..............................................................11, 12

*Pirelli Armstrong Tire Corp. Retiree Med. Ben. Tr. v. Lundgren*,
   579 F. Supp. 2d 520 (S.D.N.Y. 2008) .......................................................................12

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) ...........................................................................6, 7, 13, 14

*Seminaris v. Landa*,
   662 A.2d 1350 (Del. Ch. 1995) ...................................................................................9

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – iii

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Silicon Graphics, Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ...............................................................................6

*Tindall v. First Solar Inc.*,
   892 F.3d 1043 (9th Cir. 2018) .............................................................................6

*In re Verisign, Inc. Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) .............................................................14

*Wood v. Baum*,
   953 A.2d 136 (Del. 2008) ...........................................................................*passim*

*In re Zillow Grp., Inc. Sec. Litig.*,
   No. 2:17-cv-01387-JCC (W.D. Wash.) ............................................................1, 4

**Statutes**

12 U.S.C. § 2601 .......................................................................................................3

12 U.S.C. § 2607(a) ..................................................................................................3

12 U.S.C. § 2607(c) ..................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 23.1 ..................................................................................................5

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – iv

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1

## INTRODUCTION

Plaintiffs brought this putative shareholder derivative action on behalf of Zillow Group, Inc. against seven members of Zillow's current Board of Directors, one former director, and one of its former officers.  This suit followed closely on the heels of the securities class action filed in early September 2017 alleging that Zillow and two of its officers made misleading statements about the company's compliance with the Real Estate Settlement Procedures Act ("RESPA").  *In re Zillow Grp., Inc. Sec. Litig.*, No. 2:17-cv-01387-JCC (W.D. Wash.).  Although this Court held that the plaintiffs stated a claim in that case, this one fails because plaintiffs have not come close to adequately pleading that a demand for suit on Zillow's Board would have been futile.

This action is governed by Washington law (Zillow is a Washington corporation), which follows Delaware's law on the standards applicable to shareholder derivative suits.   Under Delaware law, a plaintiff lacks standing to sue on behalf of a corporation unless he has made either a demand on the corporation's board to sue the company or a particularized showing that such a demand would be futile because a majority of directors are "incapable of making an impartial decision regarding the pursuit of the litigation."  *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008). This stringent requirement "is a recognition of the fundamental precept that directors manage the business and affairs of corporations"—including their decisions as to whether to bring a lawsuit. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  Plaintiffs have not demanded that Zillow's Board bring a suit, so their ability to bring their own action depends on demand futility.

At the time the initial complaint was filed,[1] there were eight directors on the Zillow Board. Two of the directors are employed by Zillow and another is a director who was an employee of Zillow within the last year.  For purposes of this motion only, we do not contend that these three directors are independent.  Five are outside directors, one of whom joined the Board in early 2017

---

[1]      Demand futility is gauged at the time of commencement of a derivative suit.  *See In re Cray, Inc.*, 431 F. Supp. 2d 1114, 1121 (W.D. Wash. 2006).

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1   and plaintiffs concede is independent and disinterested.  That leaves four directors in dispute.

2   Plaintiffs do *not* claim that these directors participated in the alleged fraud.  Instead, they allege

3   that these directors are conflicted for two alternative reasons: (1) they face a "substantial

4   likelihood" of personal liability for the wrongdoing alleged in the complaint and the securities case

5   and (2) they have "business entanglements" with other directors preventing them from properly

6   considering a demand.  Both theories fail.

7          First, plaintiffs have failed to adequately plead that any one of the outside directors faces a

8   substantial likelihood of liability.  "Delaware courts have routinely rejected the notion that board

9   members can be presumed substantially liable for misconduct occurring at the company absent

10  particularized allegations evidencing that the Board knew about the illicit activities."  *In re BofI*

11  *Holding, Inc. S'holder Litig.*, 2017 WL 784118, at *15 (S.D. Cal. Mar. 1, 2017) (collecting cases).

12  Yet plaintiffs base their claim almost entirely on the class action complaint, which was *not* directed

13  at the four outside directors at issue in this motion.  Plaintiffs also accuse the outside directors of

14  failing to properly supervise Zillow's management—a theory the Supreme Court of Delaware has

15  recognized is "possibly the most difficult theory in corporation law upon which a plaintiff might

16  hope to win a judgment," *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch.

17  1996)—but they offer no explanation as to how or why any of Zillow's outside directors would

18  have *known* whether the conduct at issue was allegedly unlawful and consciously failed to take

19  action.  Instead, plaintiffs simply point to the directors' duties and claim that because Zillow

20  allegedly committed securities fraud, the directors must have been complicit.  This is exactly the

21  kind of circular theory that Delaware law forbids.

22         Second, the complaint does not make any particularized allegations that the outside

23  directors personally profited from the alleged wrongdoing or were dominated by the Zillow

24  officers who supposedly planned and carried out the alleged fraud.  Plaintiffs allege only that the

25  directors shared outside business relationships with one another.  Courts have routinely rejected

26

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – 2

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1   this sort of "entanglement" theory—recognizing that just about all directors are bound to have

2   *some* kind of business relationships with officers of the company that they direct.

3       Because plaintiffs have failed to plead demand futility, the complaint should be dismissed.

4                                    **BACKGROUND**

5       Zillow is a NASDAQ-listed company that provides e-commerce services to homeowners,

6   buyers, sellers, renters, and real estate professionals throughout the United States.  Compl. ¶ 3.

7   Among other things, Zillow sells advertising on various websites—including zillow.com and

8   streeteasy.com—to real estate agents and mortgage professionals.  *Id.* ¶ 43.  Zillow's customers

9   may obtain a special "suite" of products by paying additional fees to become "Premier Agents."

10  *Id.* ¶ 48.  These products include a "co-marketing program," under which real estate agents may—

11  but do not have to—defray a portion of their advertising costs by partnering with lenders

12  participating in the program.  *Id.* ¶ 49.  Lenders who agree to share the agent's marketing costs

13  "appear as 'Premier Lenders' in advertising alongside the agent" on Zillow's applications and

14  website.  *Id.* ¶¶ 4-5.

15      In 2015, the Consumer Financial Protection Bureau ("CFPB") dramatically stepped up

16  enforcement of RESPA (*id.* ¶ 66), which was enacted to protect home buyers from "certain abusive

17  practices that have developed" in the real estate industry, including "'kickbacks or referral fees

18  that tend to increase unnecessarily the costs of [real estate] settlement services'" (*id.* ¶ 64 (quoting

19  12 U.S.C. § 2601)).  RESPA provides that "[n]o person shall give and no person shall accept any

20  fee, kickback or thing of value" for the referral of federally insured mortgage loans.  12 U.S.C.

21  § 2607(a).  The statute contains a safe harbor for "the payment to any person of a bona fide salary

22  or compensation or other payment for goods or facilities actually furnished or for services actually

23  performed."  *Id.* § 2607(c).

24      Plaintiffs allege that the defendants concealed the fact that the CFPB had begun an

25  investigation into Zillow's co-marketing program in 2015, and the fact that Zillow redesigned the

26  co-marketing program in 2017 to make it RESPA-compliant.  Compl. ¶¶ 56, 68.  Prior to that time,

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – 3

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1  according to plaintiffs, the co-marketing program violated RESPA:  Plaintiffs allege that by

2  accepting a share of marketing costs from lenders pursuant to the co-marketing program, and then

3  posting advertising from the lender alongside Premier Agents, Zillow facilitated "kickbacks"

4  between the agent and lender.  *Id.* ¶ 55.  They further allege that RESPA's safe harbor does not

5  apply because Zillow "permitted lenders to pay a greater share of the marketing budget than is

6  justified by the number of leads provided by the [co-marketing] program."  *Id.* ¶ 59.

7        In the third quarter of 2017, Zillow announced that it was negotiating a settlement with the

8  CFPB, and that the CFPB "intend[ed] to pursue further action if those discussions d[id] not result

9  in a settlement."  *Id.* ¶ 13.[2]  Zillow's stock price dropped sharply on August 10, 2017.  *Id.* ¶ 15.

10  Attempting to capitalize on these losses, several shareholders sued Zillow, its CEO Spencer

11  Rascoff, and its CFO Kathleen Philips, for securities fraud on behalf of a putative class of

12  purchasers of Zillow stock from November 17, 2014 through August 8, 2017.  Declaration of

13  Matthew D. Ingber in Support of Motion to Dismiss Verified Consolidated Shareholder Complaint

14  ("Ingber Decl.") Ex. 1 ¶ 1.  The complaint's allegations are substantively identical to those here.

15  This Court denied the defendants' motion to dismiss the securities action on April 19, 2019.  *In re*

16  *Zillow Grp., Inc. Sec. Litig.*, No. 2:17-cv-01387-JCC (Dkt. # 54).

17        In October 2017, Matthew Sciabacucchi and Melvyn Klein brought this action on behalf

18  of Zillow, alleging that they have been Zillow shareholders since August 2015 and February 2014,

19  respectively.   Compl. ¶¶ 21-22.   The complaint asserts that (1) Zillow violated RESPA by

20  permitting mortgage lenders to make illegal payments for referrals through the co-marketing

21  program; (2) Zillow itself has already suffered "significant damages" as a result of the claimed

22  misconduct; and (3) Zillow's senior officers and virtually its entire Board should be required to

23  pay damages to Zillow because of their alleged role in the claimed wrongdoing.  *Id.* ¶¶ 4-18, 127.

_____

24

25  [2]     On June 25, 2018, Zillow filed a Form 8-K with the Securities and Exchange
     Commission disclosing that the CFPB had "completed its investigation" of Zillow and "that it
26  did not intend to take enforcement action."  *See In re Zillow Grp., Inc. Sec. Litig.*, No.
     2:17-cv-01387-JCC (Dkt. # 43 at 2).

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – 4

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1    Plaintiffs brought claims for breach of fiduciary duty (Counts I and II) and unjust enrichment

2    (Count III) against Zillow, Rascoff, Philips, and seven directors discussed below.  *Id.* ¶¶ 124-33.

3         Plaintiffs allege that they "have not made any demand on the present Board to institute this

4    action because such a demand would be a futile, wasteful and useless act" (*id.* ¶ 115) because

5    seven of the eight directors face a "substantial likelihood of liability" for the claimed fraud and/or

6    lack independence due to purported business "entanglements" (*id.* ¶¶ 116-23).  At the time the

7    original derivative complaints were filed (October 23, 2017), Zillow's Board had eight members:

8    Rascoff (the CEO discussed above), Richard Barton, Erik Blachford, Lloyd Frink, Jay Hoag,

9    Gregory Maffei, Gordon Stephenson, and April Underwood.  *Id.* ¶¶ 24-33.  Of these eight,

10   plaintiffs contend that only one—Rascoff—perpetrated the alleged fraud or played any role in

11   Zillow's management.  *See, e.g.*, *id.* ¶¶ 67, 95, 112.  For purposes of this motion, defendants

12   concede that Rascoff, Barton, and Frink, are interested, inside directors.  Plaintiffs, for their part,

13   acknowledge that Underwood did not join the Zillow Board until February 2017; they do not name

14   her as a defendant or dispute her ability to make a proper business judgment in response to a

15   demand. *See id.* ¶ 33.

16        As to the four remaining outside directors who are the subject of this motion—Blachford,

17   Hoag, Maffei, and Stephenson—plaintiffs allege that a demand for suit would be futile because

18   these directors face a substantial likelihood of liability for the conduct alleged in the securities

19   fraud complaint, and have outside business relationships with other interested directors.  *Id.*

20   ¶¶ 118-22.

21                                  **LEGAL STANDARDS**

22        Federal Rule of Civil Procedure 23.1 requires derivative complaints to state "with

23   particularity" "any effort by the plaintiff to obtain the desired action from the directors" (a demand)

24   or the "reasons for . . . not making the effort" (demand futility).  This requirement is "designed to

25   give a corporation the opportunity to rectify an alleged wrong without litigation, and to control

26   any litigation which does arise."  *Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del. 2006).  The

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – 5

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1  law of the state of incorporation—here, Washington—establishes "the circumstances under which

2  demand would be futile." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 989-90 (9th Cir.

3  1999), *superseded by statute on other grounds as stated in Burbrink v. Campbell*, 734 F. App'x

4  416 (9th Cir. 2018). When it comes to demand futility, Washington law "follows Delaware." *In*

5  *re F5 Networks, Inc.*, 207 P.3d 433, 439 (Wash. 2009) (en banc).

6      Delaware law imposes "stringent requirements of factual particularity" on plaintiffs who

7  seek to excuse the failure to make a demand. *Brehm*, 746 A.2d at 254-55. Importantly, it is not

8  enough for plaintiffs to make allegations about a company's board or committee in general; they

9  must plead particularized facts showing a disabling interest "specific to each director." *Desimone*

10  *v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007); *see also In re infoUSA, Inc. S'holders Litig.*, 953

11  A.2d 963, 985 (Del. Ch. 2007) (determination of director "[]interestedness" requires a "detailed,

12  fact-intensive, director-by-director analysis").

13      Delaware has established two tests to determine whether demand is excused. Under the

14  *Aronson* test, if the plaintiffs challenge a *specific board decision*, demand is excused if the

15  plaintiffs' allegations create a reasonable doubt that (1) a majority of the directors is disinterested

16  and independent, or (2) the transaction was the product of a valid exercise of business judgment.

17  *Aronson*, 473 A.2d at 814. Where, as here, the complaint does not challenge a specific board

18  decision, the *Rales* test applies and the second prong of *Aronson* does not: Plaintiffs must plead

19  particularized facts that "create a reasonable doubt that . . . the board . . . could have properly

20  exercised its independent and disinterested business judgment in responding to a demand." *Rales*

21  *v. Blasband*, 634 A.2d 927, 934 (Del. 1993). The Ninth Circuit has applied the *Rales* test to

22  complaints alleging a failure to disclose information and a failure of oversight. *See Tindall v. First*

23  *Solar Inc.*, 892 F.3d 1043, 1047-048 (9th Cir. 2018).

24      Plaintiffs can satisfy the *Rales* test through two alternative means: alleging interestedness

25  or lack of independence. To allege interestedness, plaintiffs must plead particularized facts

26  showing that a director faces a "substantial likelihood" of liability or "will receive a personal

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – 6

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1   financial benefit from a transaction that is not equally shared by the stockholders." *Rales*, 634

2   A.2d at 936.  To allege lack of independence, plaintiffs must "plead facts that would support the

3   inference that because of the nature of a relationship or additional circumstances other than the

4   interested director's stock ownership or voting power, the non-interested director would be more

5   willing to risk his or her reputation than risk the relationship with the interested director." *Beam*

6   *v. Stewart*, 845 A.2d 1040, 1052 (Del. 2004).  "[F]utility is gauged by the circumstances existing

7   at the commencement of a derivative suit." *Aronson*, 473 A.2d at 810.

8        These already steep pleading burdens are heightened where, as here, the corporation has

9   an exculpation clause in its Articles of Incorporation waiving certain claims for money damages

10  against directors.  *See* Ingber Decl. Ex. 2 art. 7; *see also In re Coinstar Inc. S'holder Derivative*

11  *Litig.*, 2011 WL 5553778, at *2 (W.D. Wash. Nov. 14, 2011) (court may take judicial notice of

12  corporate charter).  Washington law specifically "allows corporations to eliminate their directors'

13  liability for nonintentional breaches of fiduciary duty." *Fernandes v. Bianco*, 2006 WL 6862716,

14  at *6 (W.D. Wash. June 22, 2006).  Because shareholders who bring derivative suits step into the

15  corporation's shoes, they are bound by this waiver.  In such circumstances, a "serious threat of

16  liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the

17  directors based on particularized facts." *Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003).

18  This means that plaintiffs may demonstrate a substantial likelihood of a director's liability only by

19  pleading particularized facts that, if proven, would "show that a majority of the [directors]

20  *knowingly* engaged in [wrongful] conduct." *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008)

21  (emphasis added).  If a derivative plaintiff fails to meet this burden, the complaint must be

22  dismissed even if the claim appears otherwise meritorious. *Haber v. Bell*, 465 A.2d 353, 357 (Del.

23  Ch. 1983).

24                                    **ARGUMENT**

25       Plaintiffs have failed to plead particularized facts showing that Zillow's Board could not

26  make a proper business judgment in response to a demand to sue.  First, their complaint does not

1    adequately allege that Zillow's outside directors were subject to a substantial likelihood of personal

2    liability; it alleges neither that the directors knew that they were not discharging their oversight

3    duties nor that they deliberately misinformed shareholders that the co-marketing program

4    complied with all legal and regulatory requirements.  Second, plaintiffs have not alleged that the

5    outside directors lacked independence; they have not claimed that these directors had any close

6    financial ties to any interested director, or that any relationship with the interested directors caused

7    the outside directors "to act non-independently" "in the past."  *Beam*, 845 A.2d at 1051.

**I.**    **PLAINTIFFS HAVE NOT PLEADED PARTICULARIZED FACTS SHOWING THAT ZILLOW'S OUTSIDE DIRECTORS ARE SUBJECT TO A SUBSTANTIAL LIKELIHOOD OF LIABILITY.**

10    Plaintiffs allege that the four outside directors at issue face a substantial likelihood of

11    liability for four main reasons: (a) the Court denied the defendants' motion to dismiss the securities

12    class action complaint; (b)  the directors exercised "control" over the alleged wrongdoing; (c) three

13    of the directors were members of Zillow's Audit Committee; and (d) all four failed to properly

14    supervise Zillow's internal controls.  Each of these allegations is insufficient.

**A.**    **This Court's Decision In The Securities Suit Is Irrelevant To Whether The Outside Directors Face A Substantial Likelihood Of Liability.**

17    The complaint relies heavily on the fact that the Court denied defendants' motion to dismiss

18    the securities action.  *See, e.g.*, Compl. ¶¶ 107-12.  This Court held, for example, that the securities

19    complaint adequately alleged that Philips' statements were materially misleading "for failing to

20    disclose that the comarketing program was designed to facilitate RESPA violations and for failing

21    to disclose that Zillow had changed the program in response to the CFPB's investigation."  *Id.*

22    ¶ 112.  The Court also determined that the securities complaint adequately alleged that "Rascoff's

23    statement that '[w]e think the way we've constructed the program is completely compliant . . . was

24    materially misleading because it omitted that Zillow designed the co-marketing program to allow

25    agents and lenders to violate RESPA."  *Id.*; *see also id.* ¶ 111.

26

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – 8

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

The complaint is notably silent, however, on how the *outside* directors would have known that Philips' or Rascoff's statements were false. This Court held in the securities action only that the plaintiffs had adequately alleged scienter with respect to Zillow's CEO and CFO. Even if that conclusion were extended to all of Zillow's *officers*, plaintiffs were required to plead facts showing that at least one of the outside *directors* acted with scienter. *See Wood*, 953 A.2d at 141. Plaintiffs have not alleged a single fact to support this conclusion.

Because they typically involve different defendants, courts have routinely dismissed shareholder derivative suits that piggyback on securities fraud complaints, even when the securities complaints have withstood a motion to dismiss. In *BofI Holding*, for example, the court had previously held that a securities fraud complaint pleaded sufficient facts to give rise to a strong inference that the company's CEO acted with scienter. 2017 WL 784118, at *14-15. This decision, however, had "virtually no probative value in the demand futility context" because the CEO was only one of nine directors and the court had not found that a "strong inference of scienter attached to any of the eight remaining director defendants." *Id.* at *14. The court held that the derivative complaint had to be dismissed because the plaintiffs failed to plead that any of the outside directors "would have known that there were false and misleading statements" in the company's SEC filings. *Id.* It "reject[ed] Plaintiffs' attempt to rely on the mere existence of wrongdoing occurring somewhere at the company as evidence of the Board's knowledge or complicity in that wrongdoing." *Id.* at *15; *see also Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 372 (Del. 2006) (affirming dismissal of derivative complaint, and stating that "most of the decisions that a corporation, acting through its human agents, makes are, of course, not the subject of director attention." (quoting *In re Caremark*, 698 A.2d at 968)); *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995). The same analysis applies here: Because plaintiffs have not shown that the "alleged wrongdoing pierced the confines of the Boardroom," *BofI Holding*, 2017 WL 784118, at *15, they cannot benefit from this Court's

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – 9

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1    decision on the securities class action to demonstrate that the outside directors face a substantial

2    likelihood of liability.

3         **B.**    **Plaintiffs Do Not Explain How The Directors Exercised "Control" Over The Conduct Alleged In The Securities Action.**

4

5         Plaintiffs baldly assert that, "because of their positions of control and authority as

6    directors . . . of Zillow," the defendants "were able to and did, directly and/or indirectly, exercise

7    control over the wrongful acts" alleged in the securities suit.  Compl. ¶ 38.  The complaint offers

8    no explanation as to how they exercised this control, much less allege these facts on a

9    particularized "director-by-director" basis.  *InfoUSA.*, 953 A.2d at 985.

10        The closest thing to an explanation comes in Paragraph 118 of the complaint, where

11   plaintiffs allege that each of the outside directors "signed [a] false and misleading 2015 10-K and

12   2016 10-K, which falsely represented that [Zillow] was in compliance with all government

13   regulations."  Compl. ¶ 118; *see also id.* ¶ 126 (alleging that the directors "caus[ed] or allow[ed]

14   the Company to disseminate to Zillow shareholders materially misleading and inaccurate

15   information through, *inter alia*, SEC filings, press releases, conference calls, and other public

16   statements and disclosures").  Delaware courts have rejected practically identical allegations.  In

17   *Wood*, for example, the court held that "[t]he Board's execution of [the corporation's] financial

18   reports, without more, is insufficient to create an inference that the directors had actual or

19   constructive notice of any illegality."  953 A.2d at 142.  And in *In re Citigroup Inc. Shareholder*

20   *Derivative Litigation*, 964 A.2d 106 (Del. Ch. 2009), the court explained that "[p]leading that the

21   director defendants 'caused or allowed' the Company to issue certain statements is not

22   sufficient[ly] particularized pleading to excuse demand under Rule 23.1."  *Id.* at 133 n.88.  Courts

23   in this District have confirmed that "[o]utside directors are not typically held liable for allegedly

24   false or misleading information conveyed in prospectuses, registration statements, annual reports,

25   press releases, or other group-published information."  *Fernandes*, 2006 WL 6862716, at *4.

26

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – 10

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Plaintiffs also allege that the directors "were aware of or reckless towards the [co-marketing program] because Zillow actively tracked the number of referrals premiere [sic] agents provided to lenders," and the defendants "were also aware that the Co-Marketing Program was not subject to the safe harbor because it had data that showed that agents paid far in excess of reasonable market rates for co-marketing advertising." Compl. ¶ 65. Plaintiffs do not identify any source of such "data," let alone allege that any "internal company metrics or information [were] *discussed at the Board level*." *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 928 (N.D. Cal. 2010) (emphasis added). Plaintiffs cannot show that the outside directors had "substantial likelihood" of liability without explaining *what* any of these defendants knew or believed about the co-marketing program, *when* and *how* they acquired this purported information, or anything suggesting that they knowingly drafted or approved false or misleading statements. Such information—"allegations regarding what the directors knew and when"—is "crucial" to "establish a threat of director liability" in this context. *Citigroup*, 964 A.2d at 133-34 & n.88; *see also Murashko v. Hammer*, 2018 WL 1022575, at *5 (D.N.J. Feb. 22, 2018) ("To establish a threat of director liability based on a disclosure violation, plaintiffs must plead facts that show that the violation was made knowingly or in bad faith, a showing that requires allegations regarding what the directors knew and when.") (internal quotation marks and alterations omitted).

## C. Membership On Zillow's Audit Committee Does Not Give Rise To A Substantial Likelihood Of Liability.

Plaintiffs allege next that three of the outside directors—Blachford, Maffei, and Stephenson—face a substantial likelihood of liability by virtue of their membership on Zillow's Audit Committee. Compl. ¶ 119. They assert that "[t]he Audit Committee Charter specifically charges the members of the Audit Committee with ensuring the compliance with legal and regulatory requirements," and that these defendants "fail[ed] to take adequate steps to ensure such compliance." *Id.* Plaintiffs also allege that because Blachford and Maffei were on the Audit

1  Committee at the time the CFPB began its investigation, they "were specifically put on notice of

2  potential [RESPA] violations in 2015." *Id.* ¶ 120; *see also id.* ¶¶ 40-41.

3  These allegations are nothing more than a restatement of the fact that the directors were *on*

4  the Audit Committee. And "[c]ourts applying Delaware case law have consistently held . . . that

5  a director is not interested merely by virtue of sitting on an Audit Committee." *In re Coca-Cola*

6  *Enters., Inc. Derivative Litig.*, 478 F. Supp. 2d 1369, 1378 (N.D. Ga. 2007), *aff'd sub nom. Staehr*

7  *v. Alm*, 269 F. App'x 888 (11th Cir. 2008); *see also, e.g.*, *Murashko*, 2018 WL 1022575, at *5

8  ("[I]t is well-settled that membership, alone, on an  Audit Committee is an insufficient basis for

9  inferring scienter."); *Wood*, 953 A.2d at 142 ("Plaintiff [ ] asserts that membership on the Audit

10  Committee is a sufficient basis to infer the requisite scienter.  That assertion is contrary to well-

11  settled Delaware law."); *Pirelli Armstrong Tire Corp. Retiree Med. Ben. Tr. v. Lundgren*, 579 F.

12  Supp. 2d 520, 532 (S.D.N.Y. 2008) (dismissing derivative complaint for failure to plead demand

13  futility, and stating "[t]he Complaint does allege that the members of the Audit Committee were

14  responsible for 'reviewing and discussing . . . the Company's earnings press releases, . . . financial

15  information and earnings guidance . . . and . . . disclosure and internal controls.' . . . . However,

16  these general allegations, based simply on the fact that a defendant was a member of a board or

17  committee, without more, are insufficient as a matter of law" to show substantial likelihood of

18  liability).

19  Nor is it relevant whether the outside directors violated Zillow's Audit Committee Charter.

20  *See* Compl. ¶ 119.  "[D]irector liability is not measured by the aspirational standard established

21  by . . . internal documents." *Citigroup*, 964 A.2d at 135; *see also Accuray*, 757 F. Supp. 2d at 929

22  (same).  The question is whether, as Audit Committee members, the outside directors were

23  substantially likely to have knowledge of the wrongdoing alleged in the complaint and then failed

24  to do anything about it.  And Delaware law is clear that mere membership, without more, does not

25  establish such knowledge in the context of demand futility.

26

1

**D.      Plaintiffs Have Not Stated A *Caremark* Claim.**

2       Plaintiffs also make a boilerplate allegation that the directors "fail[ed] to maintain internal

3  control."  Compl. at 34.  This allegation is known as a *Caremark* claim, which "is possibly the

4  most difficult theory in corporate law upon which a plaintiff might hope to win a judgment."  698

5  A.2d at 967.   To prevail, plaintiffs must demonstrate that the directors "had clear notice" of

6  improprieties  and  "simply  chose  to  ignore  them"  or  affirmatively  "encourage[ed]  their

7  continuation."  *Guttman*, 823 A.2d at 507; *see also Desimone*, 924 A.2d at 935 ("For reasons

8  *Caremark* well-explained, to hold directors liable for a failure in monitoring, the directors have to

9  have acted with a state of mind consistent with a conscious decision to breach their duty of care.").

10 "[O]nly a sustained or systematic failure of the board to exercise oversight . . . will establish the

11 lack of good faith that is a necessary condition to liability."  *Caremark*, 698 A.2d at 971.

12      The complaint fails to plead *any* systematic failure of oversight.  Plaintiffs do not explain

13 how Zillow's oversight mechanisms were inadequate, how the directors would have known of

14 these inadequacies, or that they consciously ignored them.  Instead, plaintiffs rely solely on their

15 oft-repeated (but always unsubstantiated) allegation that the directors must have been aware of the

16 misrepresentations simply because they sat on the Board.  *See, e.g.*, Compl. ¶ 38.  That theory is

17 exactly what *Caremark* forbids.  *See Citigroup*, 964 A.2d at 129 (dismissing complaint where

18 "plaintiffs[] repeatedly ma[de] the conclusory allegation that the defendants have breached their

19 duty of oversight," but did not "adequately explain what the director defendants actually did or

20 failed to do that would constitute such a violation").

21 **II.      PLAINTIFFS  HAVE  NOT  PLEADED  PARTICULARIZED  FACTS  SHOWING
            THAT ZILLOW'S OUTSIDE DIRECTORS LACKED INDEPENDENCE.**
22

23      Plaintiffs have also failed to meet the second alternative prong of the *Rales* test: they do

24 not sufficiently allege that the outside directors lack the independence to consider a demand.

25      Delaware law presumes a director's independence.  *Beam*, 845 A.2d at 1050.  To defeat

26 this presumption, a complaint "must create a reasonable doubt that a director is not so 'beholden'

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – 13

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

to an interested director . . . that his or her 'discretion would be sterilized.'" *Id.* (quoting *Rales*, 634 A.2d at 936). Plaintiffs offer three reasons why Zillow's outside directors lacked independence to consider a demand. Each is meritless.

Plaintiffs first allege that Maffei and Blachford[3] lack independence because, along with Rascoff and Barton (who are interested parties), they each invested in unaffiliated venture capital funds through Technology Crossover Ventures. Compl. ¶ 121. That is as thin as it gets. "[A]llegations of 'a mere outside business relationship,' standing alone, are insufficient to raise a reasonable doubt about a director's independence." *Accuray*, 757 F. Supp. 2d at 930-931 (rejecting allegations that "certain 'long term relationships' rendered three of the outside directors dependent") (quoting *Beam*, 845 A.2d at 1050); *accord In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1200 (N.D. Cal. 2007) (no lack of independence where plaintiffs "plead no facts showing interlocking financial obligations, no facts demonstrating that any director is dominated by an [inside] officer or director . . . , and no facts establishing that any director is so 'beholden' to a controlling director or majority shareholder"). And plaintiffs' allegation is not even fairly characterized as a "business relationship." All they claim is that the two outside directors invested in the same funds as Rascoff and Barton; they do not even allege that Maffei and Blachford were *aware* of this connection.

Second, plaintiffs argue that Stephenson is dependent because he "participates in Zillow Group's Premier Agent program." Compl. ¶ 122. That is irrelevant. As discussed above (at 3), Premier Agents are given a "*[s]uite* of marketing and business technology solutions to help real estate agents and brokerages grow their businesses and brands" (Compl. ¶ 48 (emphasis added)), and the co-marketing program is simply one component of the overall Premier Agent program. Plaintiffs do not allege that the Premier Agent product violated RESPA; their only allegations

---

[3] Plaintiffs do not allege that Hoag lacks independence as a result of being a "direct or indirect director, limited partner, or member of the general partners of the TCV Funds." Compl. ¶ 121. Even if they did, plaintiffs have not pleaded with particularity any facts that would cast Hoag's independence into doubt.

1  pertain to the co-marketing program.  And the complaint does not allege that Stephenson engaged

2  in any co-marketing.  His status as a Premier Agent tells us nothing about his ability to impartially

3  consider a demand to litigate the company's alleged misrepresentations about the co-marketing

4  program.

5          Third, plaintiffs assert that Stephenson "is the Managing Partner of Real Property

6  Associates, which provides certain brokerage and rental management services to Defendant

7  Rascoff."  *Id.* ¶ 122.  Again, "the simple fact that there are some financial ties between the

8  interested party and the director is not disqualifying"; plaintiffs had to explain why these ties

9  *prevented* Stephenson from "objectively fulfill[ing his] fiduciary duties."  *In re MFW S'holders*

10  *Litig.*, 67 A.3d 496, 509 (Del. Ch. 2013).  In *In re Friedman's, Inc. Derivative Litigation*, 386 F.

11  Supp. 2d 1355 (N.D. Ga. 2005), the plaintiff shareholders alleged that one of the directors lacked

12  independence "because his company provide[d] insurance brokerage and employee benefits

13  consulting services to both" the defendant company and an affiliated entity.  *Id.* at 1368.  The court

14  rejected this claim because the complaint did "not allege any specific facts establishing the terms

15  of the relationship between" the two companies.  *Id.*  The same is true here.  The complaint "set[s]

16  forth no particularized allegations of compensation actually received by [Stephenson] in return

17  for" providing services to Rascoff, "or as to whether such compensation would be material to a

18  director in [Stephenson's] position."  *Khanna v. McMinn*, 2006 WL 1388744, at *20 (Del. Ch.

19  May 9, 2006).  That omission dooms plaintiffs' argument.

20  **III.    PLAINTIFFS HAVE NOT PLEADED PARTICULARIZED FACTS SHOWING**
   **THAT THE BOARD COULD NOT MAKE A PROPER BUSINESS JUDGMENT IN**
21  **RESPONSE TO A DEMAND THAT THE COMPANY PURSUE A CLAIM FOR**
   **UNJUST ENRICHMENT.**
22

23          In Count III of the complaint, plaintiffs seek restitution, on behalf of Zillow, "of all profits,

24  benefits, and other compensation obtained by Defendants."  Compl. ¶ 133.  This claim appears to

25  be predicated on the assumption that the defendants breached their fiduciary duties as claimed in

26

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – 15

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1   Counts I and II.  Because plaintiffs failed to show that demand was futile on Counts I and II, it

2   necessarily follows that they have failed to properly allege demand futility as to Count III as well.

3       To the extent Count III is based on a claim of excessive compensation, it also fails for lack

4   of specificity.  Plaintiffs offer no allegations about the compensation Zillow paid to any of the

5   defendants.  Excessive compensation claims can be brought derivatively under a theory of waste,

6   but first the plaintiffs must identify "whose compensation should be deemed excessive and

7   wasteful."  *In re Dow Chem.*, 2010 WL 66769, at *14 n.88 (Del. Ch. Jan. 11, 2010).  And then

8   plaintiffs must meet the "stringent requirements for [pleading] waste." *Id.*  Plaintiffs have not done

9   either here.  Thus, if plaintiffs are seeking to recover allegedly excessive compensation from some

10  unidentified defendants, the complaint fails to state a claim or show that demand would be futile.

11                                    **CONCLUSION**

12       The complaint should be dismissed.

13

14  DATED:   New York, New York
              August 22, 2019

15

16                              By: */s/ Matthew D. Ingber*
                                    Matthew D. Ingber (*pro hac vice*)
17                                  Joseph De Simone (*pro hac vice*)
                                    **MAYER BROWN LLP**
18                                  1221 Avenue of the Americas
                                    New York, New York 10020
19                                  (212) 506-2500
                                    mingber@mayerbrown.com
20                                  jdesimone@mayerbrown.com

21                                  Kelly Kramer (*pro hac vice*)
                                    Stephanie C. Robinson (*pro hac vice*)
22                                  **MAYER BROWN LLP**
                                    1999 K Street N.W.
23                                  Washington, D.C. 20006
                                    (202) 263-3000
24                                  kkramer@mayerbrown.com
                                    srobinson@mayerbrown.com

25

26

DEFENDANTS' MOTION TO DISMISS THE
VERIFIED CONSOLIDATED
SHAREHOLDER COMPLAINT
(No. 17-CV-01568-JCC) – 16

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

By: */s/ Sean C. Knowles*
Sean C. Knowles, WSBA No. 39893
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Tel: (206) 359-8000
Fax: (206) 359-9000
sknowles@perkinscoie.com

*Attorneys for Defendants*

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1

**CERTIFICATE OF SERVICE**

2     I hereby certify that on the 22nd day of August 2019, a copy of the foregoing Defendants'

3   Motion to Dismiss the Verified Consolidated Shareholder Derivative Complaint was filed

4   electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing

5   will be sent via e-mail to all parties by operation of the court's electronic filing system or by mail

6   to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties

7   may access this filing through the court's CM/ECF System.

8                                           */s/ Matthew D. Ingber*_____
                                              Matthew D. Ingber, CT Bar No. ct26336
9                                           MAYER BROWN LLP
                                              1221 Avenue of the Americas
10                                          New York, NY 10020
                                              Tel: (212) 506-2373
11                                          Fax: (212) 849-5973
                                              Email: mingber@mayerbrown.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Mayer Brown LLP**
1221 Avenue of the Americas
New York, New York 10010-1001
Phone: (212) 506-2500
Fax: (212) 262-1910

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000