UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE ZILLOW GROUP, INC. SHAREHOLDER DERIVATIVE LITIGATION | Master File No.: C17-1568-JCC ORDER |

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 43). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

## I.    BACKGROUND

This is a shareholder derivative action brought for the benefit of nominal Defendant Zillow, Inc. against current and former members of Zillow's board of directors and executive officers, seeking to remedy Defendants' alleged breaches of fiduciary duties and unjust enrichment. (*See* Dkt. No. 36-1 at 2.) Defendants Richard Barton, Erik Blachford, Lloyd Frink, Jay Hoag, Gregory Maffei, Spencer Rascoff, Gordon Stephenson, Gregory Waldorf, and Kathleen Philips are current or former board members and executive officers of Zillow. (Dkt. No. 36-1 at 6–8.) The case is related to a parallel securities fraud class action currently before the Court, in which the plaintiffs allege that Zillow and its executives made materially false and

misleading statements regarding the legality of its "co-marketing" advertising program. *See In re Zillow Secs. Litig.*, Case No. C17-1387-JCC, Dkt. No. 47 (W.D. Wash. 2018).

Zillow is a real estate marketing company that provides e-commerce services. (Dkt. No. 36-1 at 2.) Through its website and online applications, the company provides users with information about homes, real estate listings, and mortgages. (*Id*. at 9.) Zillow's primary source of revenue comes from real estate agents who pay to have their properties listed on Zillow's digital platforms. (*Id*. at 10.) In 2013, Zillow created an advertising product known as the "co-marketing program." (*Id*.) Essentially, the program allows participating mortgage lenders to pay a percentage of a real estate agent's advertising costs directly to Zillow in exchange for appearing on the agent's listings and receiving some of the agent's leads. (*Id*. at 10–12.) Prior to 2017, an individual lender could pay up to 50% of a co-marketing agent's advertising costs, while up to five lenders could collectively pay 90%. (*Id*. at 13–14.) Plaintiffs assert this program violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, by allowing lenders to pay more than the fair market value for co-marketing services. (*Id.* at 26.)

In 2015, the Consumer Financial Protection Bureau ("CFPB") stepped up its enforcement of RESPA. (*Id.* at 16–17.) That year, CFPB launched an investigation into some of Zillow's products, including the co-marketing program. (*Id.* at 13.) Zillow received a civil investigative demand from CFPB regarding the co-marketing program. (*Id.* at 5.) In February 2017, Zillow received a Notice and Opportunity to Respond and Advise ("NORA") letter from the CFPB, which stated that the agency was considering whether to recommend legal action against Zillow for violations of RESPA. (*Id.* at 13, 18.) Zillow responded to the NORA in March 2017, and the following month received a second civil investigative demand from the CFPB. (*Id.* at 18.)

While the co-marketing program was operating and while the CFPB investigation was ongoing, the individual Defendants signed 2015 10-K and 2016 10-K annual filings with the Securities and Exchange Commission. (*Id.* at 31–32.) These filings represented that Zillow was in compliance with all government regulations. (*Id.* at 21–25.) On May 4, 2017, Zillow revealed

in a first quarter SEC filing that it had received the NORA and civil investigative demand from the CFPB. (*Id*. at 26–27.) On August 8, 2017, Zillow revealed the updated status of the CFPB's investigation in a filing with the SEC. (*Id*. at 28–29.) Following this news, stock prices plunged. (*Id*.)

On October 23, 2017, Plaintiffs filed this suit. (Dkt. No. 1.)[1] At the commencement of the suit, the board had eight members, seven of whom are named as defendants in this action. (Dkt. No. 36-1 at 6–7, 31.) Plaintiffs allege that it would have been futile to demand that the board pursue Plaintiffs' claims. (*Id*. at 31–33.) Defendants now move to dismiss Plaintiffs' verified consolidated complaint, arguing that Plaintiffs have failed to adequately plead demand futility. (Dkt. No. 43.)

## II.    DISCUSSION

### A.    Rule 23.1 Pleading Requirements

Federal Rule of Civil Procedure 23.1(b)(3) requires that a plaintiff bringing a shareholder derivative suit file a verified complaint that states "with particularity" whether a demand for the desired action has been made on the company's directors and the result of that effort, or the reason no demand was made. Unlike a motion to dismiss pursuant to Rule 12(b)(6), a Rule 23.1 motion to dismiss for failure to make a demand is not intended to test the legal sufficiency of a plaintiff's substantive claim, but rather "to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 274 (S.D.N.Y. 2006) (citing *Levine v. Smith*, 1989 WL 150784, *5 (Del.Ch.1989), *aff'd* 591 A.2d 194 (Del.1991)).

In a shareholder derivative suit, federal courts apply the law of the state of incorporation to evaluate whether a demand to pursue the corporate claims raised in the suit would be futile. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108–09 (1991); *Potter v. Hughes*, 546 F.3d

---

[1] Plaintiffs have filed a consolidated verified complaint (Dkt. No. 36-1), which is now the operative complaint in this action.

1051, 1055 (9th Cir. 2008). Washington—Zillow's state of incorporation—follows Delaware's standard regarding demand futility. *In re F5 Networks, Inc.*, 166 Wash. 2d 229, 240, 207 P.3d 433, 439 (2009). In an action that alleges a board's failure to act—and that does not challenge a business decision—"a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Stone v. Ritter*, 911 A.2d 362, 367 (Del. 2006) (quoting *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)). A plaintiff can demonstrate demand futility by two alternative means: alleging the directors' interestedness or lack of independence. *See id.*

### B. Demand Futility

There were eight directors on Zillow's board when this suit was filed: Defendants Barton, Blachford, Frink, Hoag, Maffei, Rascoff, and Stephenson, and non-party April Underwood. (Dkt. No. 36-1 at 31.) To establish demand futility, Plaintiffs must plead particularized facts that create a reasonable doubt that at least four of the eight directors could exercise independent business judgment in responding to a demand. *Beam v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004). Defendants concedes for the purposes of this motion that demand is excused as to three of the directors—Barton, Frink, and Rascoff.[2] (Dkt. No. 43 at 1.) Plaintiffs do not allege that Underwood is interested or lacks independence. Thus, to defeat Defendants' motion, Plaintiffs must raise a reasonable doubt as to whether at least one of the four remaining directors—Blachford, Hoag, Maffei, and Stephenson—was either interested or lacked independence.

### 1. *Disinterestedness: Substantial Likelihood of Liability of Blachford, Hoag, Maffei, and Stephenson*

Under Delaware law, the "mere threat of personal liability" standing alone, is

---

[2] These directors are not independent because two were employed by Zillow and another is a director who had been an employee of Zillow within the previous year. (Dkt. No. 43 at 6.)

"insufficient to challenge either the independence or disinterestedness of directors." *Rales*, 634 A.2d at 936 (quoting *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984)). Instead, to show demand was futile, a plaintiff must articulate particularized facts that would give rise to a "substantial likelihood of director liability." *Id.* Because Zillow has an exculpation clause in its articles of incorporation waiving certain claims for monetary damages against directors, (*see* Dkt. No. 44 at 18), Plaintiffs must plead facts that, if proven, would show that the directors *knowingly* engaged in wrongful conduct. *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008). The court draws all "reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences." *Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000). Thus, demand may be excused where, based on plaintiffs' allegations, it is reasonable to infer that directors consciously acted or failed to act. *See id.*

Plaintiffs offer two theories under which the directors could face liability based on the facts in the complaint. First, Plaintiffs argue that two members of the audit committee— Blachford and Maffei—are liable for their failure to act. Plaintiffs allege that the audit committee members are charged with "ensuring the Company's compliance with legal and regulatory requirements, "including "reviewing legal and regulatory matters that may have a material impact on the Company's financial statements and related Company compliance policies and programs." (Dkt. No. 36-1 at 9, 33.) Plaintiffs also allege that Blachford and Maffei were aware that the company's program potentially violated RESPA, yet failed to take adequate steps to ensure compliance. (*Id.* at 32–33.) Plaintiffs argue that under these facts, Blachford and Maffei violated their duties of loyalty and good faith and thus face a substantial likelihood of liability. (Dkt. No. 45 at 15 n.10.) However, Plaintiffs do not state what specific types of actions Blachford and Maffei should have taken yet failed to take. Thus, Plaintiffs have not pled facts about Blachford and Maffei's failure to act that could give rise to a substantial risk of liability. *See Wood,* 953 A.2d at 142.

Plaintiffs offer a second theory of liability, arguing that the complaint shows that Blachford, Hoag, Maffei, and Stephenson could face liability because they made misleading statements when they signed the 2015 Form 10-K and the 2016 Form 10-K. (Dkt. No. 36-1 at 31–32.) Plaintiffs, however, do not allege any facts showing that Defendants Hoag and Stephenson knew that the co-marketing program might have been in violation of RESPA. If Hoag and Stephenson did not know that the statements were false and misleading when they signed the forms, the exculpatory clause in the company's articles of incorporation would likely shield them from liability. *See Wood*, 953 A.2d 141. Thus, Plaintiffs have not pled facts that could show Hoag and Stephenson face a substantial likelihood of liability.

On the other hand, Plaintiffs allege that Blachford and Maffei served as audit committee members when Zillow received the 2015 civil investigative demand from the CFPB. (Dkt. No. 36-1 at 32.) Plaintiffs further allege that, as audit committee members, Blachford and Maffei were charged with reviewing legal and regulatory matters that may affect the company. (*Id.* at 9.) Because Blachford and Maffei were members of the audit committee, it is reasonable to infer that they were informed of the contents of the civil investigative demand. *See Brehm*, 746 A.2d at 256. Plaintiffs allege Blachford and Maffei were therefore on notice that the company's co-marketing program potentially violated federal law. (Dkt. No. 36-1 at 5, 32.) Blachford and Maffei subsequently signed the company's 2015 Form 10-K and 2016 Form 10-K. (Dkt. No. 36-1 at 22–24, 33–34.) These two forms include statements about Zillow's legal and regulatory compliance that the Court has previously found, for motion to dismiss purposes, to be false and misleading. *See In re Zillow Secs. Litig.*, Case No. C17-1387-JCC, Dkt. No. 54 at 19–23.[3] Thus, Plaintiffs have alleged facts sufficient to support an inference that Blachford and Maffei could face a substantial likelihood of liability. *See Rales*, 634 A.2d at 936; *Forestal v. Caldwell*, Case

---

[3] The Court concluded it was plausible that those statements could "give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *See In re Zillow Secs. Litig.*, Case No. C17-1387-JCC, Dkt. No. 54 at 19–23.

No. C16-4492-MWF, 2016 WL 9774914, at *8–9 (C.D. Cal. 2016). Accordingly, Plaintiffs have raised a reasonable doubt as to Blachford and Maffei's disinterestedness and demand is therefore EXCUSED.

### 2. Independence of Maffei, Hoag, and Blachford[4]

To challenge the directors' independence, Plaintiffs must show that the directors' ability to act impartially can be doubted because they are so "beholden" to another director that "their discretion would be sterilized." *See Rales*, 634 A.2d at 936. "Allegations of . . . a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004). "To create a reasonable doubt about an outside director's independence, a plaintiff must plead facts that would support the inference that . . . the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director." *Id.* at 1052.

Plaintiffs allege that three directors—Maffei, Hoag, and Blachford—were not independent because they have interlocking economic relationships with Defendants Barton and Rascoff through Technology Crossover Ventures ("TCV Funds"). (Dkt. No. 36-1 at 33). As discussed above, the parties agree that Barton and Rascoff are not independent. (Dkt. No. 43 at 1.) Plaintiffs allege that Barton and Rascoff "have invested in various private equity and venture capital funds" of TCV Funds. (Dkt. No. 36-1 at 33.)

Plaintiffs allege that Maffei is not independent because he, like Barton and Rascoff, invests in TCV Funds. (Dkt. No. 36-1 at 32–33.) Plaintiffs do not allege any facts about the value of the investments or that being fellow investors in the same fund constitutes a meaningful business relationship, let alone close financial ties. Indeed, Plaintiffs do not respond to

---

[4] In Plaintiffs' response to this motion, they do not challenge Defendants' argument that the complaint fails to allege Stephenson's lack of independence (although Stephenson's disinterestedness is still at issue). (*Compare* Dkt. No. 43 at 19–20 *with* Dkt. No. 45.)

Defendants' argument that Maffei's ties are so insignificant that they are "not fairly characterized as a 'business relationship.'" (*See* Dkt. No. 43 at 19.) Even drawing all inferences in Plaintiffs' favor, Plaintiffs have not raised a reasonable doubt as to whether Maffei is independent of his fellow investors Barton and Rascoff. *See Beam*, 845 A.2d at 1050.

Hoag and Blachford have deep ties to TCV Funds, where Barton and Rascoff invest. Plaintiffs allege Hoag co-founded TCV Funds and continues to serve as a founding general partner, and Blachford is a venture partner of TCV Funds. (Dkt. No. 36-1 at 33–34.) Plaintiffs argue that it would not have been "good for business" for Hoag or Blachford to vote to take legal action against Barton and Rascoff. (Dkt. No. 45 at 17.) But Plaintiffs do not allege the degree to which TCV Fund relies on the investments of Barton and Rascoff. Thus, it is not reasonable to infer that Hoag and Blachford were beholden such that they "would be more willing to risk [their] reputation[s] than risk the relationship with the interested director[s]." *Beam*, 845 A.2d at 1052. Therefore, Plaintiffs have not adequately alleged facts that raise doubts about the independence of Defendants Maffei, Hoag, and Blachford.

But because Plaintiffs have pled specific facts sufficient to raise a reasonable doubt as to Blachford and Maffei's disinterestedness, (*see supra* Section II.B.1), six of the eight directors were cannot be considered *both* independent and disinterested, and demand is therefore excused. *See Rales*, 634 A.2d at 934. Accordingly, Defendant's motion to dismiss for failure to plead demand futility is DENIED.

### C.  Unjust Enrichment

The parties agree that Plaintiffs' claim for unjust enrichment depends whether demand was futile. (*See* Dkt. Nos. 45 at 18, 46 at 14.) Defendants argue that the Court must dismiss this claim if the Court dismisses the other breach of fiduciary duty claims against Defendants. (Dkt. No. 45 at 18.) The Court has not dismissed these claims. (*See supra* Section II.B.) Thus, there is no ground to dismiss the unjust enrichment claim. Therefore, Defendants' motion to dismiss Plaintiffs' unjust enrichment claim is DENIED.

III. **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 43) is DENIED.

DATED this 28th day of February 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE