THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE ZILLOW GROUP, INC.
SHAREHOLDER DERIVATIVE
LITIGATION

CASE NO. C17-1568-JCC

ORDER

This matter comes before the Court on the parties' agreement regarding discovery of electronically stored information ("ESI") (Dkt. No. 68). The Court ENTERS the following:

**A.  General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. The proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of electronically stored information ("ESI") and related responses should be reasonably targeted, clear, and as specific as possible.

**B.  ESI Disclosures**

1. At a time to be agreed to by the Parties, each party shall disclose:

2. <u>Custodians.</u> The custodians most likely to have discoverable ESI in their possession, custody or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under his/her control.

3. <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (e.g., shared drives, servers, etc.), if any, likely to contain discoverable ESI.

4. <u>Third-Party Data Sources.</u> A list of third-party data sources if any, likely to contain discoverable ESI (e.g., third-party email and/or mobile device providers, "cloud" storage, etc.) and, for each source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

5. <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonable accessible under Federal Rule of Civil Procedure 26(b)(2)(B).

**C.  Preservation of ESI**

The Parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. With respect to preservation of ESI, the Parties agree as follows:

1. Absent a showing of good cause by the requesting party, the Parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the Parties shall preserve all discoverable ESI in their possession, custody or control.

2. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a. Deleted, slack, fragmented, or other data only accessible by forensics.

      b.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

      c.      On-line access data such as temporary internet files, history, cache, cookies, and the like.

      d.      Data in metadata fields that are frequently updated automatically, such as last-opened dates.

      e.      Back-up data that are substantially duplicative of data that are more accessible elsewhere.

      f.      Server, system or network logs.

      g.      Data remaining from systems no longer in use that is unintelligible on the systems in use.

      h.      Electronic data (e.g., email calendars, contact data, and notes) sent to or from mobile devices (e.g, iPhone, iPad, Android, and BlackBerry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**D.**    <u>**Privilege**</u>

The Parties should confer regarding the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

1.     With respect to privileged or work-product information generated after the filing of the complaint, the Parties are not required to include any such information in privilege logs.

2.     Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Federal Rule of Civil Procedure 26(b)(3)(A) and (B).

3.     Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection, if: (i) such information appears on its face to have been inadvertently produced

ORDER
C17-1568-JCC
PAGE - 3

or (ii) the producing party provides notice within 15 days of discovery by the producing party of the inadvertent production.

4.      <u>Privilege Logs Based on Metadata.</u> The Parties agree that privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure.

**E.      ESI Discovery Procedures**

1.      As used herein, the term "Third Party" means any person or entity that is served with a subpoena pursuant to Federal Rule of Civil Procedure 45.

2.      The Parties will comply with this Agreement in producing any ESI or other documents (collectively "Discovery Material") in this litigation.

3.      By agreeing to this Agreement, the Parties do not admit that any Discovery Material produced under its terms is relevant or admissible in this litigation or in any other litigation.

4.      The parties agree that if any additional productions will be made that use Search Terms or Technology Assisted Review ("TAR") they will provide notice with ample time to allow parties to meet and confer in good faith regarding creation of a mutually agreeable protocol for their use.

5.      The Parties will make reasonable efforts to ensure that all ESI and other material they produce is legible to the same extent as it is maintained in the ordinary course of business.

6.      The terms of this Agreement shall apply to all Discovery Material disclosed during the litigation pending before the Court, including Discovery Material disclosed prior or subsequent to the entry of this Agreement.

7. "Native File(s)" means ESI in the electronic format of the application in which such ESI is created, viewed, and/or modified in the ordinary course of business. Native Files are a subset of ESI.

8. "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

9. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems.

10. An image load/unitization file in a standard .opt or .log litigation support image load format shall be included that provides: (i) the document number for each image; (ii) the full path name(s) of each TIFF that represents an image; and (iii) the document boundaries for each document. The load file also shall be in the order that appropriately corresponds with each image file. The following represents the format of a standard .opt or .log image load/unitization file: Bates, Volume, Path_to_image, Document Break, Folder Break, Box Break, Total_Pages.

11. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations.

12. **Production of Hard-Copy Documents**. The Parties agree to produce hard-copy documents in single-page TIFF image format named according to Bates number accompanied by document-level optical character recognition ("OCR") text files. The Parties also agree to provide load files linking the TIFFs with their associated text. The database load file should contain the following fields: "BEGBATES," ENDBATES," "PAGE COUNT," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (i.e., contain correct document

breaks: for instance, a five-page document consisting of a cover page and a four-page report should be unitized as a five-page document).

      a.      The Parties will scan hard-copy documents such that the images appear the same as the documents that are kept in the ordinary course of business. Reducing image size may be necessary to fit page size or display production numbers and confidentiality designations without obscuring text.

      b.      If a folder with hard copy documents is produced, the label of that folder should be scanned and produced along with the documents in the folder. The foldering relationship among the documents in the folder should be produced, either by use of a parent-child relationship or otherwise.

      c.      Hard copy documents containing color need not be produced in color in the first instance. However, if good cause exists for the receiving party to request production of specific documents in color, the receiving party may request production of such documents in color by providing (i) a list of the Bates numbers of documents it requests to be produced in color format; and (ii) an explanation of the need for production in color format. The producing party shall not unreasonably deny such requests, but need not make such production until the parties reach agreement regarding the additional costs associated with the production of documents in color.

      d.      If any original hard-copy document has notes affixed thereto or attachments, the Parties will scan and produce copies of the notes or attachments in the same manner as other documents.

13.    **Production of ESI**. For the production of ESI, the Parties agree to produce ESI in single-page Group IV TIFF image format using at least 300 DPI print setting, with the exception of items listed in Paragraph 13(a) below. Each image shall have a unique file name, which is the Bates number of the document. Original documentation shall be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs will show any and all text and images which would

be visible to the reader using the native software that created the document. Additionally, the Parties agree to deliver extracted text corresponding to each imaged document as individual text files named for the Bates number of the document. The path to the text files will be referenced in the Full Text field in the .dat file. An .opt image cross reference file will also be provided for all TIFF images.

      a.    Exceptions:

           i.    Excel files, spreadsheet files, .CSV files, source code, audio, and video shall be produced in native format with a placeholder TIFF image in accordance with the production format set forth above. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVE FILE PATH field. The exception will be for redacted Excel files which will be produced in TIFF format as specified in Paragraph 13. Images for the redacted Excel files will display the content in the same manner as if such files were printed. The extractable metadata and text shall be produced in the same manner as other documents that originated in electronic form. To the extent that either party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this Paragraph, the Parties agree to meet and confer on the issue in good faith.

           ii.    *Image Not Readable*. Where TIFF images of certain documents are not readable, or do not represent the files as maintained in the ordinary course, the Parties will produce such documents in native format or in hard copy. To the extent the receiving party obtains through discovery a file or document that the receiving party believes is not adequately represented in TIFF image format, the receiving party may request that file or document be produced in native format, the production of which shall not be unreasonably withheld.

           iii.    *Non-Convertible Files*. Certain types of files such as video and sound files are not amenable to conversion into TIFF format. Such files will not be converted into TIFF format but will be represented in the form of a placeholder TIFF image. These files

will be provided in native format with the source file path provided, or in a reasonably usable form by agreement of the Parties. For example, if the native format is not playable using Windows Media Player, then the file may be produced in an alternate format (for example, recorded telephone calls may be produced in a .wav format).

14. For any document that is redacted, the producing party may withhold any metadata that is the subject of the redaction, and provide OCR text for the produced image as redacted.

15. The Parties agree that all ESI shall be produced with the metadata in the table below and in the manner set forth in this Paragraph, to the extent reasonably available for a particular document. Database information shall be provided in a ".dat" file extension, which contains the metadata fields provided below as a delimited database load file. For the Relativity.dat, the Parties should use Relativity standard delimiters (ASCII 020 corresponding to a comma, ASCII 254 corresponding to a double quote, ASCII 174 corresponding to a new line, and a semicolon used to separate multiple values within a single field). The fielded data should include all the below metadata fields for a file in addition to the unitization (including the production number of the first and last page of each document), and attachments (including information sufficient to identify the parent and child relationships of all documents and ESI that are or have attachments). The first line of the data load file should contain the field headers indicating the contents of each field, and each subsequent line should contain the fielded data for each document. The Parties are not obligated to populate manually any of the following fields with the exception of the CUSTODIAN and VOLUME fields, which must be populated by the producing party.

//
//
//
//
//

| Production Metadata Fields | Field Description |
|---|---|
| BegBates | Beginning Bates number |
| EndBates | Ending Bates number |
| BegAttach | Beginning Bates number of the last document in an attachment range |
| EndAttach | Ending Bates number of the last document in an attachment range |
| Custodian | Name of the custodian the file was sourced from |
| DuplicateCustodian | Name(s) of any custodian of any deduplicated version(s) of the document |
| FileName | File name of the original file name |
| SourceFilePath | Path and file name in the ordinary course of business |
| FileSize | Size of the file in bytes |
| DocExt | Native File extension |
| EmailSubject | Subject line extracted from an email message |
| Title | Title field extracted from the metadata of a non-email document |
| Author | Author field extracted from the metadata of a non-email document |
| From | From field extracted from an email message |
| To | To field extracted from an email message |
| CC | CC field extracted from an email message |
| BCC | BCC field extracted from an email message |
| DateReceived | Received date of an email message |
| TimeReceived | Received time of an email message |
| DateSent | Sent date of an email message |
| TimeSent | Sent time of an email message |
| DateCreated | Date that a file was created |
| TimeCreated | Time that a file was created |
| DateLastModified | Date that a file was last modified |
| TimeLastModified | Time that a file was last modified |
| SHA-1 or MD5 | SHA-1 or MD5 value for the document |
| FileDescription | File type of the document |
| Native File Path | Path to native file as produced |
| Page Count | Number of TIFF pages produced |
| Volume | The name of the CD, DVD, or hard drive |
| Full Text | Path to the full extracted text of the document |

16. To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each party will remove duplicate ESI prior to producing documents. Global de-duplication is

executed at the document family level. Stand-alone files will de-duplicate against other stand-alone files, but not against attachments contained in document families. Deduplication shall be done on exact duplicate documents based on MD5 or SHA-1 hash values at the document level. Each party shall make reasonable efforts to remove exact duplicate ESI across custodians and to produce searchable metadata in a "Duplicate Custodian" field for each produced document sufficient for the receiving party to identify all custodians of the produced document. If such a process is not possible, each party will conduct deduplication only within a source (e.g., within a custodian). The producing party will disclose which method of deduplication has been utilized. If during the course of its review, the producing party identifies a large number of duplicate documents, the Parties can confer regarding a custom deduplication protocol. No custom deduplication method will be implemented without the consent of the receiving party, and such consent shall not be unreasonably withheld.

17. For all forms of production, parent-child relationships (i.e., the association between an attachment and its parent document) should be preserved. For example, if a party produces a printout of an email with its attachments, such attachments should be produced behind the email in the order in which they were attached and identified as child documents to the parent email. If a party withholds as privileged any document or portion of a document, any parent-child relationship must be similarly maintained. For example, if a party withholds an attachment to an email as privileged, the email will be produced with a child file stating that an attachment has been withheld, and stating the grounds for the withholding. Similarly, if a party withholds an email as privileged while producing the attachment, the parent-child relationship will be similarly maintained and the grounds for withholding of the email will be similarly stated.

18. Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001—with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of

Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

19. A party that issues a Third Party subpoena ("Issuing Party") shall include a copy of this Agreement with the subpoena and request that the Third Party produce documents in accordance with the specification set forth herein. If a party issued a Third Party subpoena prior to the execution of this Agreement, that party shall promptly forward a copy of this Agreement to the Third Party and request that the nonparty produce documents in accordance with the specifications set forth herein. The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena to all other parties. No party shall be required to reformat or re-Bates stamp any documents are data produced by a Third Party in this litigation. In the event that a Third Party produces documents without Bates numbers, then the party who sought discovery from the Third Party shall produce the reproduction or production with a unique Bates number in accordance with Paragraph 18. Nothing in this Agreement is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Third Party to object to a subpoena.

**F.     Miscellaneous**

1. If there is a conflict between the provisions of this Agreement and the Stipulated Protective Order (the "Protective Order"), the Protective Order shall control.

2. Nothing in this Agreement shall be interpreted to require the disclosure of any Discovery Material that a Party contends are protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection, nor shall this Agreement require the production of ESI or other documents that are not discoverable under applicable law.

3. Moreover, nothing in this Agreement shall waive or limit any protections afforded the Parties under Federal Rule of Evidence 502(d).

4. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Agreement.

Pursuant to the parties' stipulation, IT IS SO ORDERED.

DATED this 2nd day of November 2020.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE